Do I need to give an opening statement at this point? You don't need to. Do you wish to make your argument? Okay I can do that through an opening statement. Shall I start now? Yes, you may start now. Okay, the petitioner is an active member of the JKNAP party since 2012 and that's in his home country of Kashmir, which advocates, the party advocates an independent Kashmir from Pakistan. Prior to his membership, four members of the JKNAP party were tortured and agency. The first threat to petitioner was made in July of 2013 by the Pakistani police if he continued to advocate for Kashmir independence from Pakistan. Now the big thing happened later. On October 22, 2014, JKNAP members, that's in his party, demonstrated for Kashmiri independence and protested the deaths of their party leaders. The police dispersed the demonstration using batons, tear gas, and guns. The petitioner was hit on his head, back and right foot at the October 22, 2014 protest. The petitioner was taken to a hospital and given treatment, stitches and medication. And on that same evening, the Pakistani police and one military man raided his home with a warrant for his arrest. That warrant is called a FIR, F-I-R in capital letters. The police and the Pakistani military man searched his house, broke his personal property, and threatened his wife's life if she did not surrender him. On October 29, 2014, Pakistani police again raided his house and gave his wife a FIR arrest warrant, that's an F-I-R arrest warrant, based upon his disloyalty to Pakistan. Mr. Kreiss, may I ask you a question, please? Sure. The court issued a focus order asking the parties to please discuss at oral argument whether Mr. Hussain was given the opportunity to explain any inconsistencies, implausibilities, or omissions before the immigration judge could rely on them for an adverse credibility determination. Yes. Do you notice an opportunity to explain requirement before making an adverse credibility determination in this case? I'm not sure of that because I was not representing him, I think, at that point in time. And I'm sure that he provided any correct answers to them. And the immigration judge, I believe, found him not credible, but I've explained that in my brief to the court in connection with that issue. If we were to decide that Mr. Hussain was not given the opportunity to explain what the immigration judge found inconsistent, what would the proper remedy be? Remand to the agency so that Mr. Hussain can have the opportunity to explain any omission, inconsistency, or implausibility identified by the immigration judge? Well, I believe that he has specified all the answers as well as in my briefs to the court as well as the tribunals below. And I think we're at the point now of just looking at the decision below to see if it really is proper in view of his problems with the military and police in this home country. I'm sorry for interrupting. The problem with that is that we're not in the business of determining credibility. Oh, I'm sorry. Say that again. We're not in the business of determining credibility. So isn't the most that we can do is to remand for the IJ to take another look at the case? Well, if that's all that can be done, then we would request that so that he has an opportunity to say his piece with respect to every one of those issues. Well, you're arguing, am I right, that the IJ's adverse credibility determination was not supported by substantial evidence. That's your argument, right? That's correct. And so therefore, we should make that finding and grant relief. But suppose we feel that there's gaps because some of the inconsistencies seem are apparent inconsistencies. And the problem is procedurally that these things that are apparent inconsistencies, which actually I'm, I mean, I'm not sure there is any real inconsistency here because some of seem to not be inconsistencies. Well, then I guess there's others where you'd like to have a fuller story like the who were the June 2013 threats from and who from the government came to stop the protest in February 2014. But I'm not sure. Well, I'm not sure exactly what you're arguing. Well, I'm arguing he should obtain asylum based upon all of the facts of record. And it seems pretty clear to me that his engagement with a political party there that's in the eyesight of the military and police and what they've done to people in this party, as well as him, because they hit him over the head and cracked his head. I mean, that to me, that is supportive evidence of asylum. Yeah. I mean, it's more than just, you know, a speech and things like that, that he, you know, was demonstrating at that demonstration. I mean, they actually hit him on the head. What more is needed for an asylum case than having somebody bludgeoned by police and an army people based upon his political beliefs and assertions and declarations that that, you know, on that moment, you know, in that demonstration? You know, to me, that means asylum is in which is based upon, you know, the things that happen to somebody who has political beliefs and is tortured or whatever because of those beliefs. That's a ground for asylum. And I've been doing this for, you know, 20 some odd years in immigration and before that patent litigation and before that with the Justice Department. And I have never seen anything like that before. But to me, that qualifies for asylum and that was not granted to him. And it's all based on a political belief he has that, you know, the regime in Pakistan, should be turned around. And in fact, our own president, President Obama disregarded, you know, the country personnel there when we went in to get Osama bin Laden. He never told them about that. And that's, you know, one of the things that one country does with another. But he didn't do that. You know, because of, you know, that country, Pakistan, they just do things very differently in Pakistan than in most other countries in the world. So, okay. So, the first inconsistency that I.J. cites was that he first testified that there was a threat from a Pakistani agency through the local police in June 13, but then the I.J. says, but on cross, he again said it was by the local police. And then on redirect, he said it was a threat from the army. Is that a true inconsistency? Or are you saying that in Pakistan, all these agencies are working together so that they're? Oh, they definitely are all working together. That was apparent to me when I was reading everything. So, they were all working together. So, your point is that it's not like in the United States where these are very separate agencies. Like if I said I had a threat from the military, that'd be very distinct from a threat by the local police. Yeah, I do believe that they all work together in connection with these things, especially with who are against the ruling government and who demonstrate orally at meetings and fairs and things like that and say bad things about the government and the way it's handling things. It's very different than in the United States where one political party can say bad things about the other and the other can respond and whatnot. It's very different because they have control through the military to prevent either demonstrations or place those who are demonstrating in jail. And they did that to some of his party members and they were looking for him as well. They even issued an arrest warrant for him. So, he goes back. He's going to jail and he's going to jail. So, you're over your time, but I'll give you some time at the end for rebuttal. Why don't we hear from government counsel, Mr. Evans? May it please the court, I'm Manning Evans representing the government. I thank the panel for postponing the originally scheduled argument in this matter. Turning to the case, the record fully supports the agency's adverse credibility determination. For the court to reverse that determination, the record would have to show that no reasonable adjudicator could have ruled as the agency did. The record does not show this. The government's brief and the agency decision set out numerous inconsistencies in petitioner's evidence, and the government will rest on those analyses unless the court has questions about them. In response to petitioner's reply brief in which he emphasizes that even under the Real ID Act, trivial inconsistencies cannot form the basis of an adverse credibility determination, we refer the court to footnote four of the Shresthna decision. That's 590 F4th at, I'm sorry, the inception page is 1034. And there the court recognizes that even minor inconsistencies, when aggregated or viewed in light of the total circumstances, may undermine credibility. Assuming petitioner's inconsistencies are minor, they still aggregate into more than substantial evidence supporting the agency's decision. I guess my question is, are they really inconsistencies? Like the doctor's note, he clearly was hit on the head, he clearly went to the hospital, he clearly had treated, just because the stitches, I mean, he was treated for a head injury, just because the stitches weren't actually mentioned. How is that an inconsistency? I mean, that's based on a huge assumption by this IJ, that medical records in Pakistan would thoroughly document the treatment, the precise treatment, you know, like medical records in the United States. Well, Your Honor, it's one omission. And I think the court needs to look at the totality of the circumstances here. And the totality is overwhelming. This man could not testify consistently as to who is threatening him, how they were threatening, whether it was by phone or in person, the nature of the threats. I think that it all does add up to a reasonable conclusion by the agency that it could not trust what this person claimed to have an adverse credibility determination, can it? Well, Your Honor, as I said, it's all a matter of the totality of the circumstances. It is certainly reasonable to consider one omission when there are so many other supporting factors as well. I think that when you weave together the entire story that this person tried to tell, you just cannot tell what happened in Pakistan. And so the agency was reasonable in not crediting him and not finding that he met his burden of proof. Do you have any record citations where Mr. Hussain was offered the opportunity to explain any inconsistency related to the June 2013 protest or any omission related to the August 2014 protest? Well, Your Honor, I'm not sure that the agency went through every inconsistency. So to answer your question, no, at the moment, I don't. I will cite the court to our brief. I believe it's pages 23 and 24, where we do point out that the immigration judge did review problems with the petitioner's evidence at the conclusion of the last hearing. With respect to the order that the court issued, the government would first assert that this issue has been waived or forfeited because it doesn't appear in the petitioner's opening brief, as this court's decisions require. And relatedly, the principle of party presentation, which the Supreme Court discussed in United States against Seneng Smith, that's a 1040, I'm sorry, 140 Supreme Court reporter, 1575, said that the parties represented by competent counsel know what is best for them and are responsible for advancing the facts and arguments entitling them to relief. We'd add as well that observing the waiver in this case is not unjust. This is not a case where the agency was completely oblivious to this requirement as the BIA referred to it and believed that the IJ had complied with it. Petitioner may have been of the same view as his brief to the BIA did not mention this rule. That's an administrative record 5 to 13. No motion to review. Let's talk about your brief. On page 29, you say the board ruled that the immigration judge properly provided Mr. Hussein with multiple opportunities to explain these inconsistencies, but he failed to sufficiently do so. Let's look at page 36. When the immigration judge and government counsel gave him an opportunity to clarify his testimony, Mr. Hussein specifically stated that this occurred in August of 2013. So in your brief, you argue in different parts that Mr. Hussein was provided the opportunity to explain inconsistencies. So how would you be prejudiced by the court looking at whether this procedural requirement of opportunity to explain has been met here when you've argued it in your response brief? Your Honor, we don't know what inconsistencies the petitioner thinks were inadequately provided for. I think the government was including that in its brief in an excess of caution. Meanwhile, the government would be prejudiced, Your Honor. This case has been pending here at this court for five years since the Board of Immigration decision and Supreme Court recognized in the Enkin decision that there is always a public interest in the prompt execution of removal orders. I'd point out as well that the Department of Homeland Security did include some further inconsistencies in its brief to the IJ. That's at the administrative record, pages 730 to 732. There was no response from the petitioner to that submission. We'd also point out that between the time that the board issued its decision in this case and I believe the, well, in 2019, the board issued its own precedential decision on the opportunity to explain rule. That's matter of YIM. The cite for that is 27 INN decision 724. And in that case, the board narrowed the rule and said that there's no need to provide an opportunity to explain if the inconsistency is apparent or obvious. So this is the kind of ruling that the board itself could have ruled even in petitioner's case had he raised the issue, but he didn't. And meanwhile, the board has had no opportunity in this case or the immigration judge for that matter to apply the rule that it thinks should govern the opportunity to explain. So the problem I have is that the IJ found all these alleged inconsistencies that didn't confront the petitioner with the idea that he thought they were inconsistent. And so you kind of have things passing in the night where he thinks he's testifying consistently and doesn't find out until the IJ issues its decision that no, this was inconsistent with that. And so had he been asked, well, what about the stitches? Why are those stitches not in the doctor's note? He might have a very plausible, reasonable explanation for that, that we don't have the benefit of knowing. Well, your honor, petitioner was represented by counsel throughout the Right. But counsel, the IJ has a duty under the regulations to fully and fairly develop the record. Your honor, I mean, I think the proceedings here went on for some time. And meanwhile, represented by counsel, the unusual thing about the opportunity to explain rule is that it's up to an attorney to decide whether or not they're going to try and rehabilitate a client on redirect. And frequently, I mean, there are practice manuals that will say, if you can't fix it, don't ask. You're talking about civil litigation. You're not talking about the immigration regulations where they put the duty on the IJ. Well, your honor, there is some duty, but this is a situation that's a regulation that governs. There is a duty under the regulations. But your honor, once the petitioner has counsel, competent counsel, whose competence is not questioned at all in these proceedings, it's reasonable for the immigration judge, especially as she does review some of the problematic evidence, to leave it to the petitioner's counsel to raise any other liability. But what if the lawyer doesn't even know that the IJ is secretly harboring this, aha, got you, stitches was omitted from the doctor's note. I mean, the IJ should let them know what they think. That's inconsistent, sir. Well, ultimately, your honor, the IJ does do that in her thorough decision, her thorough decision here goes on for pages. And this person could have raised this issue before the BIA, but didn't. Could have raised it in a motion to reconsider before the IJ, but did not. Could have raised it in a brief here, but did not. If the person had a problem with what the immigration judge, it's at least reasonable to expect after five years for them to raise the issue, and they didn't. Can I ask a question? You referenced Matter of Yim, and Matter of Yim says that circuit courts agree with the board's decision, and they cite Risk Beholder, which is a Ninth Circuit 2011 case, which is not limited in the way that you state about only blatant consistencies should be given an opportunity to explain. So you would agree that at least the BIA thought whatever it was doing was consistent with Ninth Circuit law, which does not have a more restrictive view of which inconsistencies are entitled to an opportunity to explain. Well, it's an interesting question, your honor. I actually had another case here that raised this question. We were asking this court to recognize that the board had altered the rule. The panel didn't reach it. It was a non-published decision. But the point is that this is an area of procedure before an agency. This court cannot impose this rule on the agency of its own accord, and Ming Dai is quite clear on that. If the agency is going to develop this rule, it can do it on its own, and that's what it did in YIM, and it actually followed the Second Circuit's law in this area, where the Second Circuit, I believe, had recognized the apparent or obvious exception. All I'm saying, though, raising this point is that this is the kind of issue that the BIA could address if it was raised to them, but it wasn't, and it's not fair to the government now to hold this omission against it when there are so many reasons to think that this was a fair proceeding. May I ask one last question, Judge Wardlaw? Oh, of course. I know he's well over his time, but we've been peppering with one last question. No, no, no. It's not your fault. It's our fault. We've been asking a lot of questions. No, we appreciate your answering our questions, so no need to apologize. I had one last question, and that is the opportunity to provide corroborating evidence and notice that corroboration is needed. If I look at pages 152, 153 from the record, this is the only notice that's in the record of the need for corroboration, and I find it very confusing, but I'd love to hear your view on it. So, it starts on page 152, line 19, and this is the judge to Mr. Hussain's counsel during the hearing. I guess one more thing, counsel, he talked about at length about this demonstration where he believed an FIR would issue or did issue. That was the August 2014 demonstration. If there's any information on that, we would. Counsel says the August 2014 demonstration? The judge says yes. Question by the petitioner's counsel, are you the judge or any of the demonstrations? Judge's answer. Petitioner's counsel, okay, sure. Judge, these are sizable demonstrations. Petitioner's counsel, sure. Judge, okay, so with that, we'll adjourn. Do you think that this is sufficient notice of what corroboration is needed, and if so, what is it that's being requested in this exchange? Right. Well, again, this is not an issue that's been raised in the briefing, Your Honor. I don't mean to sound like a broken record, but the court needn't worry about this issue here, I would suggest, because the agency did not rely on the failure to corroborate in reaching the adverse credibility determination. The law regarding corroboration is quite complex. If the immigration judge, prior to asking for corroboration, thought that the, and said that the petitioner was not credible and, therefore, required corroboration, the failure to provide corroboration would be significant in itself, and the agency could have relied on that. But it didn't follow that route, so it's really not an issue, and I think it's, you're certainly correct, Your Honor, that it's ambiguous exactly what the immigration judge is asking for here. It sounds like the reference to sizable demonstration means that she's thinking there would be news coverage, but she doesn't require it. She doesn't explain further, but this is just an unfortunate, you know, these hearings, I think at the end of the day, the judge is probably a little tired and not as precise as she should have been. If this had mattered, it would have been a problem. It doesn't matter. If there are no further questions, we'd ask that the panel deny the petition for review. Thank you very much, counsel. Thank you, Your Honor. And Mr. Price, I'll give you a minute for rebuttal. Well, I tried to explain in my brief, you know, the question on the issues of him lying or telling the truth or whatever, but I reviewed the evidence, and it seemed to me, and don't forget, he's from Bangladesh and with language problems and whatnot, but it seems to me that in the asylum practice, and I do a lot of that now, I mean, formerly I was a Justice Department trial lawyer, and then in private practice, a patent lawyer and whatnot, but now I'm an immigration lawyer, and it seems to me that when you're dealing with immigrants, especially those that don't have a lot of familiarity with even the English language, there's a different perspective that needs to be used, and my dealings with the immigration courts, you really know that stuff, and so I don't know what happened in this particular situation with this judge, but I do know from the facts that I see in this case, this man should have been entitled to asylum because he had stitches on his head. He was hit, and he was in a political party. None of that really made a big difference in the decisions, but it should have. I don't get it. I don't get it at all because it seems to me that being part of a political party that he was demonstrating like he was against a government that even our country does not like to deal with, and I give you the example of President Obama sending our fighters over to kill bin Laden and not telling the government of Pakistan, which is where he was, so our executive branch doesn't trust that country's government. Why should we in an asylum case? My God, this guy was hit over the head. He was a member of a political party that demonstrated and that they were out after him, and they issued an arrest warrant and gave it to his wife. Why doesn't that all make sense on an asylum case? I don't get it. I'm at a loss for words when it comes to that, and I've done a lot of asylum cases. My God, even our president, our former president wouldn't even deal with the damn country of Pakistan. Our planes went over their border, and no one told them about it. All right, counsel, I think you're now repeating yourself, so we will take this case under submission.
judges: WARDLAW, NGUYEN, KOH